Next is United States v. Valenzuela, Valenzuela. Counsel, I know you're, on one side, a different lawyer, and you should have a fair chance to make your presentation. But, of course, you don't waive anything by failing to mention it in oral argument, and you know perfectly well that we have some cases grouped with the same issue. So just make your own judgments based on not waiving anything that you don't talk about. Please proceed. Thank you, Your Honor. Chris Teskel again. I also represent the United States in this case. This case is a cross appeal. The government appeals the sentence imposed by the district court, and the defendant in turn appeals the district court's denial of his motion to compel discovery in connection with the selective prosecution claim. In my opening argument, I intend to address only the government's appeal, the sentencing issue, and I wish to reserve five minutes of my time to respond to the defendant's argument. The central issue in the government's appeal is the meaning of the following language in Application Note 1, Sentencing Guideline Section 2L1.2b, and that language is crime of violence includes forceful sex offenses, including sexual abuse of a minor. As the Fifth Circuit recently held while this case was being briefed, the meaning of that language is that any sexual abuse of a minor offense is a type of forceful sex offense, which in turn is a crime of violence. The district court had a different interpretation, and what the district court said was that, quote, only forceful acts of sexual abuse of a minor qualify as crimes of violence, end quote, and that's at page 100 of the record. There are a number of problems with the district court's interpretation, and I intend to walk through those separately. The first problem is that it's difficult to square the district court's interpretation with the language of the application note, and in particular it's difficult to square the district court's interpretation with the meaning of the word includes. That word means to have as part of the whole. So when the Sentencing Commission wrote forceful sex offenses, including sexual abuse of a minor, the Sentencing Commission was stating that sexual abuse of a minor is included within, is a type of forceful sex offense. In other words, the word include is the opposite of the word excludes. It adds definition and expands the meaning of the phrase that precedes it. That meaning also is clear when you compare the use of the word includes made by the Sentencing Commission within this very definition, because the word includes appears more than once. The definition also states that crime of violence includes not only forceful sex offenses but a variety of other offenses, such as burglary and arson, and in that context it's clear that the word includes means that those listed offenses, burglary, arson, are crimes of violence. They are included within the category of crimes called crimes of violence. The second problem with the district court's interpretation is that it effectively deletes the parenthetical including sexual abuse of a minor. That's true, because if only forcible instances of sexual abuse were included within the definition, then there was no reason to include the parenthetical. In other words, the parenthetical is made surplusage by the district court's holding because the phrase forceful sex offenses already includes forceful acts of sexual abuse against a minor. The third problem with the district court's argument is what I would characterize as a slippery slope argument, and that is that the district court's interpretation leads to what I would call absurd results. Under the district court's reading of the application note, most sexual abuse of a minor offenses, including offenses against very young children, would not qualify as crimes of violence because most state statutes do not require the government to prove as an element the use of physical force. Now, I think the district court recognized this problem because at the end of its sentencing decision, the district court said, well, if the victim is very young, under 12 or perhaps under 14, we can assume that it's forcible and then those crimes would be included, too. The problem with that interpretation, what could be called the under 12 exception to the district court's reading of the application note, is that it's untethered to any language within the application note. In other words, the district court seems to be inventing an under 12 exception to save or make reasonable and otherwise unreasonable interpretations of the guideline provision. Counsel, is it correct that our circuit has not ruled on this issue? Other circuits have, and all the other circuits that have have gone the government's way on it. That is correct, Your Honor. There are four circuits which have addressed this guideline provision. The 5th, the 7th, the 11th, and the 8th. The 5th circuit has expressly addressed every argument that's made in this appeal, and they have decided for the government. The other three circuits, the argument that was made in those cases, was what the district court called the conjunctive disjunctive issue, which is how to read section 1 and section 2 of the definition. And each of those circuits decided in favor of the government on that particular issue. But those other cases didn't address the parenthetical. The 5th circuit case, Rao-Beldad. The 5th did, I understand. Yeah, the other cases did not address the parenthetical. Just whether the includes was an expansion or just an illustration, I guess, and it's an expansion, I assume, is the way everybody has been holding. In other words, burglary of a dwelling where nobody's home may well not have an element of force. That's correct, Your Honor. Against the person of another, but it qualifies anyway. Correct. Under these other circuit cases. Correct. Correct. What those other circuit cases, what they did was address the argument that in order to be a crime of violence, the crime had to fit both section 1 and section 2 of the definition. Section 1 has a general definition saying crimes that have an element that involves the use of force. Although all the circuit court authority on that issue has said that you don't read it that way because, again, that word includes begins section 2. And what includes means is that it's expansive. It means it's to be part of a whole. And so how you read it is that a crime of violence is what's defined in subsection 1 and includes and is also what's cited in subsection 2. I mean, I can see the argument the other way. Include usually means you're referring to something that is encompassed within the whole you've just been talking about. And what Congress apparently what the sentencing commission has done is say, well, here's a group. And it includes these other things that normally wouldn't fall within it, which is a strange use of the word include. Either they normally wouldn't fall within or there might be some issue about whether they fall within, for example, arson and burglary. They don't. They seldom involve the use of force as an element. And yet the sentencing commission has consistently said that those are crimes of violence under the career offender guideline. And now under this guy. Well, we used to talk about serious risk of harm, but that's been combed out. Right. And in place of the serious risk of harm, they took out serious risk of harm, but then they did something different than the career offender guideline, which is they put in that parenthetical, including sexual abuse of a minor. And that was a reasonable decision to make, in part because so many cases under the career offender guideline had already held that sexual abuse of a minor was a crime of violence because it presented a substantial risk of harm. So within that context, what the sentencing commission did make sense. It also makes sense because if you look at the definition of aggravated felonies, which is in Title VIII, Section 1101A43, that definition contains a list of aggravated felonies, and the first on that list is murder, rape, comma, sexual abuse of a minor. And in this guideline, the commission gave itself the task of deciding which offenses still got the 16-point enhancement and which ones would be considered less serious offenses. So the reasonable interpretation here is that what the commission did is they looked at the definition of aggravated felonies and thought, oh, sexual abuse of a minor is there. We need to decide whether or not that keeps the 16-point bump or gets an 8-point bump. And what they did, obviously, was place it within the definition of crime of violence along with crimes like murder because they thought it was a serious offense. Counsel, I handled a few sex abuse of a minor cases one way or another in practice and as a trial judge, and I never saw one that involved violence or serious risk of violence or anything close to violence. Should I just take it that crime of violence is now a term of art and it doesn't have to involve violence? If it's sex abuse of a minor, it doesn't matter that it's, oh, the fairly common case of somebody doing something inappropriate with a minor who's asleep and remains asleep through the whole thing, it's just a term of art? Well, it's certainly a term of art in the sense that crime of violence has a very specific legal definition. And, yes, you should take it that the commission has said in the context of this guideline that sexual abuse of a minor is a crime of violence. And what the commission did was create a list of per se crimes of violence. These are crimes that as long as they meet that definition, as long as you can call it sexual abuse of a minor, it's a per se crime of violence. And the point of doing that obviously is going through the catalog in my head of the sex abuse of minor cases that I had and not one of them had the slightest thing to do with violence. I guess that's what troubles me a little. What troubles me the other way is the idea of disagreeing with four circuits. Right. And to address what troubles you, there's a large amount of case law. Burglary in a dwelling is different. You go into a dwelling in a lot of parts of the country, including the part where I live, if the person's home they're going to be armed in all likelihood. It's real risky business. A lot of those turn violent, but not the sex crimes with minors. There's a great deal of authority addressing that issue, Your Honor, in the context of the career offender guideline. And the tilt of that authority is that it is inherently violent because of the inherent harm that would be caused to the victim. You mentioned an example, the person who's sleeping and not aware of the act. Well, this court held in the United States v. Riley that that kind of rape against an adult is a crime. Most of them aren't even rape. Most of them are just something to satisfy the prurient and lascivious inclinations of the criminal, like pulling down the blanket on a little girl who's sleeping and becoming sexually stimulated by doing that. That's a fairly typical sort of case. Fondling cases are the most common, I suppose, at least what I've seen. I think what the Sentencing Commission says, and I frankly agree with it, is that that kind of sexual act against a child should be considered violent. It's essentially a sexual assault that invades the integrity of the child and has dangerous ramifications for the child. It has real dangerous ramifications, but they're psychological dangers. They're not dangers of getting maimed or killed. If there's penetration, there's actual danger of physical harm as well, Your Honor. But the psychological harm certainly can't be ignored either. Most of them don't involve penetration. A lot of them don't even involve touching. I do, but it's touching where, whether it's criminal or not, just purely depends on the psychological aspect, like, oh, I've never had one of these, but my colleagues have a fair number of bathing cases. Somebody's bathing the child. Is it a sex offense or not depends on what was in the head of the person giving the bath. Right, and that's right, but yet if you take a step back and look at why those crimes are punished as felonies, it's because the situation is bad. It's bad for the child, it's bad for society, and it's ultimately harmful. Of course, but you're not speaking to the violence issue. Sure, it's harmful. That's why it's a crime. It's considered so despicable that even most of the other criminals in the prison think that these violators are more despicable than they are. But that doesn't mean that it's violence. It's just you can be despicable without being violent and violent without being despicable. They're just two different things. Counsel, in this particular case, what was the nature of the abuse of the minor? The defendant was convicted under California Penal Code Section 288C, and in answering that question, at least for purposes of this appeal, the court limits its analysis to the statute, the charging document, and the defendant's plea colloquy. And what the defendant was convicted of and what he pled guilty to was willfully and unlawfully and lewdly committing a lewd and lascivious act upon the body of Angelina G., who was 14 years old with the intent of arousing, appealing to, and gratifying the lusts, passions, and sexual desires of himself when Angelina G. was 10 years older than Angelina G. And we also know from the plea colloquy that he was 30 years old at the time. So what this court has before it, the commission that has it before it, is the commission of a non-lawful and lewd and lascivious act upon the body of a 14-year-old girl with the intent by the defendant to sexually arouse himself. So we'll look at the categorical definition rather than going to the individual instances and making the determinations whether or not there was a threat or actual violence in that particular scenario. Correct, Your Honor. You apply the categorical approach. I acknowledge that there was a factual dispute at the state court level about whether or not an actual threat of violence was made. The victim said yes. The defendant said no. There, of course, was no reason to resolve that dispute because the crime didn't require it as an element. But, again, that fact is irrelevant because the only issue is whether or not his crime is sexual abuse of a minor because the Sentencing Commission has told us that that is a crime of violence. And to answer Judge Kleinfeld's question, the best I can do to answer your question, sir, is to say that under the career offender guideline, where there's a specific provision that includes crimes that involve a substantial risk of violence or harm to the victim, many circuits have held that sexual abuse of a minor is such a crime. And those courts have relied on a couple factors. One is the idea that minors can't consent to the sexual act. So it doesn't make sense to require the use of force in the context of sexual abuse of a minor because you don't need to show that the minor was not consenting and that their will was overcome. They just don't – it's not – they're protected precisely because they're vulnerable in society. And it also involves a risk of violence because of the size, the age, and the authority differences between the minor and the adult. So what you have is an adult taking advantage of a helpless, weak individual in society for their own sexual gratification. And the courts that have applied the career offender guideline have more than not said that sexual abuse of a minor offense, at least when it involves someone who's 14 years old, as in this case, is a crime of violence under that guideline. Now, as Judge Canby noted, I recognize that our guideline here doesn't have that same language, the substantial risk of harm. But what our guideline has is an express inclusion of sexual abuse of a minor as a type of crime of violence. Counsel, would you have that same – would you have that same approach if, for instance, the perpetrator was 18 and the victim was 16? Yes, Your Honor. I mean, I have the same approach. I'm not sure I have the same answer.  And if you answer yes, then the answer is it is a crime of violence under this guideline. Now, the example you gave, it's not a felony under California law. And I think to answer Your Honor's concerns is that when you have that kind of crime, relatively few states punish it as a felony. And I say that generally. In a state that did punish for age differences that are very small, would your analogy hold? It would, Your Honor, as long as you included sexual abuse of a minor. Now, I can imagine a healthy debate about whether or not that kind of crime is considered sexual abuse. It clearly is sexual and involves a minor. In a lot of states, two teenagers making out in a car, if it's an 18 and a 16-year-old, that's sexual abuse of a minor, isn't it? I think in a lot of states that's a misdemeanor. A lot of states it's a felony. I mean, some states it's a felony. And it may be, Your Honor. And to be perfectly clear, yes, Your Honor, I think if it qualifies as sexual abuse of a minor, then it is a crime of violence. So you don't see any gradations in terms of your argument that you're overcoming the will of a helpless person? You don't see that analogy being weakened by the closeness in age of the two participants? I don't see the analogy being weakened because what I'm focusing on is what's the right way to read what the commission was up to. The problem is that you go the other way, which is you start making distinctions between minors who are 16 and minors who are 14 or minors who are 14 and minors who are 12, is that you're reading a lot into what the sentencing commission was doing, which isn't there. In other words, once you try to draw those distinctions, you've walked away from the per se category of crimes, and you're essentially applying the career offender guideline and saying, well, does it really involve a risk of force in this particular instance? So your viewpoint is if the state characterizes it as sexual abuse of a minor, then it's a done deal and we have no authority to see whether or not that comports with the purpose of the guidelines? No. If I understand your question right, it doesn't matter if the state calls it sexual abuse of a minor. The state could label it sexual abuse of a minor. It could label it statutory rape. It could label it really bad acts against children. What this court does is it looks at the definition of the crime, and it decides whether or not that crime meets the definition of the federal definition. I thought you said once it's been labeled as sexual abuse of a minor, then the guideline has to apply. I thought that was true. By this court. This court's decision-making process is does this crime constitute sexual abuse of a minor? And that is for this court to decide. That's a pure legal issue. Now, I point out that this court has addressed this issue in Barron-Medina, and I think it's hard to distinguish this case from Barron-Medina in terms of that issue. So I think that issue has actually been answered by the court. I was on that. I'm not sure that that's true. You're not sure that's true? I'm not sure that's true because I wrote that opinion. Yeah, well, Barron-Medina addressed California Penal Code Section 288A. This involves California Penal Code Section 288A. I'm not sure it's as broad as you are interpreting it to be. That's all I'm saying. Okay. I'm going to reserve the rest of my time to respond. You don't have it. Use it all up. Did I use it all up? Yeah, it's gone. Okay. Thank you, counsel. Good morning, Your Honors. Oh, let me explain something. When you saw that 43 and it went to 44, that was counting up from after you used up your time. I thought the clock was set to reserve the time. No. That's just what I explained at the beginning before the arguments began, that you were responsible for your own time. Thank you, Your Honor. May it please the Court, Sean Halbert, Assistant Federal Public Defender, on behalf of David Valenzuela. Your Honors, State and Federal statutes explicitly distinguish between conduct with persons who are teenagers, 14, 15-year-olds or older, and persons who are younger, 12 and younger. Those statutes also explicitly distinguish between conduct that involves a sexual act or even sexual contact and conduct that is abusive but does not necessarily involve touching, does not involve knowledge of the person upon whom it is performed. And the reason those statutes make such distinctions is because there is a difference between the conduct and furthermore, those distinctions are reflected in the punishments that are prescribed for the particular acts. And similarly, the only question for this Court is the extent of the punishment that Mr. Valenzuela is to receive. Should his guideline sentence of 12 to 18 months be increased by a factor of three for being an aggravated felony or should it be increased by a factor of six for being a crime of violence? And as the Court knows, Section 288C, as opposed to 288A, has a statutory maximum of three years. And what that means is Mr. Valenzuela, by virtue of having had his federal sentence enhanced by being convicted of that crime, his federal sentence was enhanced by the statutory maximum of the underlying crime with which he was convicted. The government proposes it should be increased by approximately six years, which is double the statutory maximum. Had he been convicted of violating Section 288A, we would be dealing with a different situation, but he was convicted of something different. The government's brief, less so than its argument today, has much more opprobrium and rhetoric, but this is a question not of whether what Mr. Valenzuela did was wrong but whether it was violent, such that it triggered the highest possible enhancement. It should be beyond dispute that the guideline, 2L1.2, was amended to decrease enhancements based on prior convictions. As the Court knows, previously, all aggravated felonies triggered a 16-level enhancement. The Commission sought to decrease some of the enhancements based on prior convictions, specifically because not all prior convictions are as more or persons are not as morally culpable, depending on the conviction. Counsel, how do you respond to the other circuits who have come down a different way on that issue? Your Honor, I think that's important. There is only one circuit that has addressed what I believe is the most important question before this Court, and that is the Fifth Circuit. I wish to clarify that the Seventh, Eleventh, and Eighth Circuits, their rulings was about the argument that the district court actually found in favor of the government, which was whether they were. The conjunctive, disjunctive. Exactly. So the district court, in our case, did not rely on that argument for its ruling. And I believe that that argument really goes to the ambiguity of the statute, and that's, I believe, my least important argument. The Fourth Circuit case, Pierce, was a career offender case, which deals with the language that is not relevant to our case. There is one. You know, the other, there is some relevance to the fact that three circuits have decided that the first includes clause, which starts subsection two, includes murder, manslaughter, and so on, is not simply defining examples of what falls under the first section. It's an expansion of those. I think that's what all the circuits have said, that when they say it includes murder or manslaughter, that means even if we can imagine murder not involving force, burglary we can imagine maybe, or arson of an empty building. Well, once you say that that's the way the commission is using includes, it's not much of a step to get to your point and say, well, they say forcible sex offenses, including sexual abuse of a minor, which means there's another expansion going on. In other words, it would be consistent with the prior use of includes to rule against you on the parenthetical issue. Your Honor, if I, just before I address that, and that is actually, I think, one of the most important issues that I did want to address today, I just wanted to make one distinction with the Fifth Circuit case, because that is the only case that would directly contradict the ruling I'm asking this Court to make. And the Fifth Circuit did not have the benefit, I believe, of the type of district court opinion that we had in this case. We had multiple hearings before the district court. We had supplemental briefing. I believe that the district court considered issues the Fifth Circuit didn't continue. And I also would like to point out that the Fifth Circuit misread the guideline 2A3.1. It referred to that guideline as support for its opinion, but indicated that the guideline referred to any act against people 16 or under, regardless of whether force was used. And that is, of course, exactly not true. Those guidelines make a distinction between 12- and 16-year-olds. And, Judge Canby, on your point there, I have a few responses. The first is that I believe what those other courts did with respect to the term includes, they were dealing with a poorly worded section. I think we're all in agreement there. And so I believe what they did is to say that the word includes refers back to crime of violence. I believe it's, in other words, the subsection B, when it says and includes, that is referring back to crime of violence and saying that the larger term crime of violence also includes those enumerated crimes. I don't believe it should be interpreted to say that subsection A includes subsection B and therefore includes means to encompass more than the whole. That's a sensible reading. That a crime of violence includes murder, manslaughter, and whatever else is listed. That's correct. And I think there is no ‑‑ I don't think any party can have a really fully consistent interpretation because murder and aggravated assault would always include force as an element. Why would they include the language then, the parenthetical language? Why would that be included in your view? Your Honor, I believe that grammar does not help us out here because the term forcible sex offense, the question is, does the parenthetical including sexual abuse of a minor refer to sex offense or does it refer to forcible sex offense? And I've consulted Strunk and White and I think it's just ambiguously written. So I don't think the grammar answers the question one way or the other. But I did think of a couple of examples that I believe support the defense's reading of how it could be interpreted with this respect. If there was the phrase serious drug offenses and then the parenthetical including conspiracy or aiding and abetting, in that case conspiracy or aiding and abetting would clearly refer to drug offenses and nonetheless there would have to be a showing that it was serious. Similarly, a term substantial upward departures, parenthetical including non‑enumerated departures. Again, the parenthetical would refer to the previous two words but the adjective would still modify the whole phrase. What do you do with the argument that it makes the whole parenthetical unnecessary? Your Honor, the reason that I don't think it does is this. The term sex offense is not a term that is easily understood and what subsection guideline 2A3.2A2, which I did cite in the brief, specifically notes that sexual abuse of a minor can occur without the commission of a sexual act or sexual contact. The reason I believe that the commission wanted to include sexual abuse of a minor within sex offenses is that I believe there is a very strong argument that a person could make that a sex offense must require either sex or sexual contact and certainly with an adult a sex offense would require sexual contact or ‑‑ I'm not sure that I'm following the thread here. Let me tell you what's on my mind. It seems to me that sex offenses often don't involve contact and they often don't involve sex for one of the parties, like those bathing cases. The way they typically come about, at least the ones I've seen in my town, are a nasty divorce and the wife says the husband was bathing the little girl with lascivious intent and he says, no, I'm just bathing her. And the jury decides. Even something like murder. I can imagine a murder where there is no intent to use violence. You get a lot of them, drunk driving murders. And it's easy to imagine a manslaughter that doesn't involve violence in the usual sense, as medical malpractice where it's really gross and extreme and the DA decides to charge it. A lot of these, most especially the sex, but a lot of these could be nonviolent. And I'm wondering if there's any way to read it except as just a list of offenses that we're going to call them crimes of violence and max them out and violence has nothing to do with it. Well, Your Honor, I think that the distinction between murder and the sexual abuse of a minor is, regardless of the level of intent, a person who experiences a murder clearly experiences violence. And with respect to the Section 288C can be violated by somebody touching a person's stomach or their foot. There's no requirement that the contact be with a sexual part of the body. So I think that the distinction is important is that the person does not necessarily experience violence and violence does not have to be used in the commission. It's also important to look, if the commission, if we wanted to know for sure that the commission had meant to include every instance of sexual abuse of a minor, which includes cases in which there's no sexual contact or act, there are two different ways that the commission could have done it. Firstly, it could have been listed as a separately enumerated offense. In other words, forcible sex offenses, comma, sexual abuse of a minor. It also could have been listed in the 16-point increase, as was child pornography. And if the court looks at the actual guideline itself as opposed to the commentary which we're describing, there it was specifically enumerated. So I think what we have is a situation in which the commission could have unequivocally enumerated all cases involving sexual abuse of a minor as crimes of violence if it had chosen to. And it did not. So I think what is extremely important is that the government takes the position that what this means is that vast areas of or vast numbers of convictions will no longer be included as crimes of violence. But as this court may know, there are always statutes that prohibit sexual contact or any kind of sexual abuse where there is force or intimidation used. So what I would suggest to the court, and the court doesn't have to decide, of course, all of those statutes, but with the defense's reading of 288C and how this court should rule, any crimes involving young children, and those could be 12 or younger, any instances of sexual contact where force or violence or intimidation is used with 12- to 16-year-olds or a 17-year-old, all of those could be considered crimes of violence. But, counsel, wouldn't we really be rewriting the guideline at that point? Your Honor, I absolutely don't think we would be. This is a ‑‑ I think when the commission clearly meant to decrease the number of offenses triggering 16 levels. It specifically eliminated the very language in the career offender guideline that was the basis for every single decision that the government has relied on. That language was eliminated. It put forcible ‑‑ it defined forcible sex offenses and then created a parenthetical where it is at the best ambiguous as to whether that parenthetical means to express that these are actual sex offenses or whether it means to say they're forcible. I think what we're left with is at best an extremely vague guideline where the commission deliberately did not enumerate sexual abuse of a minor as a crime of violence, deliberately did not include language about risk, and was intending to decrease the number of crimes to which the guideline applied. I think that at the very least, this was a case where the government did not object to the PSR, filed a late sentencing memo in which there was no explanation for why an objection hadn't been given. We're dealing with an ambiguous statute. I believe that the rules of lenity with the government's failure to object, in addition to the fact that this is a very vague guideline that would increase his sentence by a factor of six, I believe even if this court at the best decides that there is ambiguity here, that it should be interpreted in favor of the defense. It's very attractive to avoid a difficult issue with a procedural ground and the lateness of the government's filing might offer that way of handling it. But as I remember, the district court didn't rely on that at all, right? So we can't use it. The district court, Your Honors, I believe that this court – I don't believe this court needs to rely on a procedural issue because I think we're – I'm not saying it needs to. But I think – But counsel, before we leave that, why do you say it was late? Your Honor, under the local rules, the government is required if it objects to the – the PSR found that there was not a crime of violence. The government is required to make an objection to the PSR, give the probation office time to review it, and then to file a sentencing memo within seven days. There was no objection to the PSR on this ground with respect to this conviction, and the government sentencing memo was filed within a shorter time period of seven days. I raised that, and I considered not raising it at all, but the court – the district court did not make a finding of good cause. And so I – But the district court also did not make a finding that it was late either. Your Honor, it was – it was unambiguously violated the rule. The question would be if this court was inclined to remand, I would ask that it would be remanded for a showing of good cause. But I – If – what I'm wondering is it looks to me like government counsel simply and plainly and blatantly violated the rules, and he didn't ever offer any excuse for it. But the district court decided the case on the merits rather than rejecting the government's position on the ground that it had not been urged when it was required to be urged. Since the district court did not decide the case based on the violation of rules and reached the merits, we have no choice but to reach the merits. That was my analysis of that. But if we can avoid reaching the merits and just affirm on the basis that the government failed to object to the pre-sentence report at the required time, and that we can just tell from the docket sheet, we don't have to ask the district judge, I'd like to know it. Your Honor, I did – I did not find a case exactly on point. I found – and I did cite two cases in the brief, one of which says that the court of appeals can apply a different standard of review given a failure to object the government. I don't remember which party's failure it was. Secondly, the district court didn't ultimately have to reach that issue because if – in other words, if the district court had been inclined to rule against the defense, then perhaps it would have taken it up. As it was, it was ruling – it was ruling consistently with the probation report, consistently with the defense. And so there – I think – I think this court can apply a different standard of review, and there was no showing of good cause. Of course, this is the kind of an issue that's going to come up again and is going to have to be decided. That's correct, and I believe – I believe that this is an excellent case to do it. I did want to mention Barron Medina because the government mentions it, and one thing I would say that's an important distinction is that involved younger children. I believe that the government – there is a sense that it is somehow offensive to say that a 14- or 15-year-old can factually consent to sexual contact and that it is somehow morally reprehensible to distinguish between teenagers and younger people. What is extremely important is not only do the federal guidelines explicitly make that distinction, not only do the federal guidelines explicitly describe factual consent by persons over the age of 12, but every single federal and state statute that addresses sexual contact or conduct explicitly distinguishes between persons who are younger and persons who are teenagers, which I believe is a recognition of the society we live in that while violence may be assumed when someone is 10 or younger or where there's a sexual act, violence should not be assumed with a statute where a sexual act is not required and where you have factual consent. But counsel, don't some of the statutes distinguish in terms of age discrepancy as opposed to the age of the victim? Some of them distinguish 10 years older or worse to that effect, rather than saying the age of the victim per se. That's correct. I would note, though, that not only in Section 288, there is not only a much lower statutory maximum for subsection C, which deals with 14- and 15-year-olds, but also under the California codes a person can receive a suspended sentence for a violation of Section 288C, whereas that is not available except under extraordinary circumstances for Section 288A, and there are higher penalties. So it is true that if Mr. Valenzuela had been 24 as opposed to 30, he could not have been convicted under the statute. But I think what's important is that the government is asking the court to lump together everything that could possibly be called sexual abuse of a minor, whereas the state statutes themselves, the federal statutes themselves, and the federal guidelines themselves don't lump everything together. Well, the guideline, the parenthetical does. It says sexual abuse of a minor. Well, Your Honor, that's only if the court does it. I mean, our interpretation is that the commission wanted to be very specific that sex offense included conduct that didn't involve sex and didn't involve sexual contact. And I think that that might not have been clear had the commission not said sexual abuse of a minor is a sex offense, meaning even if sex was not involved. Because I think the plain reading of sex offense would have led lawyers and judges to rule that it had to involve sex. So this clarifies that it doesn't have to involve sex if a minor is involved. Well, I don't think judges heretofore had required a finding of sex to find sexual abuse. I don't think that's a fair reading of the jurisprudence in this area. Well, Your Honor, I think if an adult's stomach – well, I actually did – the research I did on this was there were a myriad of cases where nobody knew what sex offense meant. I cited – I think I cited two of them in the brief. There are many descriptions in state and federal cases of what is sex offense. I think what that tells us is there is no clear definition. So I think it was reasonable for the commission to say sex offense may involve conduct that does not involve sex, and that would not be intuitively obvious. I'd like to make a disclaimer for the record. I did not write the opinion in U.S. v. Vera Medina that the government cited. That case that I'm talking about is pending publication. So my disclaimer is on the record. Thank you, Your Honors. Thank you, counsel. The United States v. Valenzuela is submitted.
judges: Canby, Kleinfeld, Rawlinson